IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

WILLIAM H. LUCAS, III,

    Plaintiff,

v.                                               No. 06-2234 B

MEMPHIS CITY SCHOOLS
BOARD OF EDUCATION,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT
_____

INTRODUCTION

On April 19, 2006, the pro se Plaintiff, William H. Lucas, III, filed a complaint for declaratory, injunctive and monetary relief against the Defendant, Memphis City Schools Board of Education ("MCS"), alleging violation of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, et seq., and pursuant to 42 U.S.C. § 1983 for a violation of his Fourteenth Amendment right to due process. Before the Court is the October 23, 2006 motion of the Defendant to dismiss the Plaintiff's claims pursuant to Rule 12 of the Federal Rules of Civil Procedure.

PLAINTIFF'S ALLEGATIONS

According to the complaint, the Plaintiff was employed as a chemistry and physics teacher at Middle College High School in Memphis, Tennessee from August 2, 2004 to February 25, 2005. From September 8 through 23, 2004, Lucas was absent from work due to his voluntary participation in a supervised rehabilitation program for the treatment of depression and chemical dependency, after which he returned to his job. On February 21, 2005, school principal Joyce Mitchell referred

the Plaintiff to human relations and, on the following day, Lucas met with MCS labor relations administrator Kimkea' Harris in order to discuss possible accommodations, types of leave offered by the Defendant and to inform Lucas of a five percent attendance policy relied on by MCS to discipline employees. The Plaintiff was given a verbal ultimatum--participate in a mandatory consult with an employee assistance counselor or suffer disciplinary action. Lucas chose the former and attended a counseling session with Renae Robinson of the Methodist Healthcare Employee Assistance Program ("EAP"). He notified Harris that he accepted the recommendations of the EAP and would need to be excused from work on February 23 and 24, 2005 in order to select a suitable rehabilitation program and secure funds required for admission and initial screening costs. The Plaintiff also advised Harris that he would like to meet with her on February 28, 2005, a date on which Carla Carpenter, his EAP representative, could also be present. Harris refused to meet on the 28th and scheduled the meeting for February 25, stating additionally that Lucas should not report to work until further notice. The Plaintiff notified Carpenter of the situation and requested that she contact MCS concerning when he could return to work. On March 5, 2005, the Plaintiff received written notification from Harris that he had been terminated. The stated reason for the discharge was excessive absenteeism. Carpenter sent a letter to MCS on March 8, 2005 outlining Lucas's position and requesting a hearing. Harris denied the request for a hearing and stated that the termination decision was final. On April 20, 2005, Virginia A. McCoy, an attorney with the Tennessee Education Association, submitted a request for a hearing to MCS superintendent Carol Johnson, to which there was no response.

Lucas was assessed by Teresa Scott, care management counselor at Lakeside Outpatient Counseling Center, on March 1, 2005 and agreed to enter a four to six week intensive outpatient

treatment program on March 7. The program would have allowed the Plaintiff to work in the morning and receive treatment in the evening. Lucas was prohibited from engaging in any other activities from 6:30 to 9:30 p.m. on weekdays, which required him to withdraw from classes at the University of Memphis. He completed the program on March 31, 2005.

## STANDARD OF REVIEW

Rule 12(b)(1) permits dismissal of a complaint for "lack of jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1). "When the defendant challenges subject matter jurisdiction, the plaintiff has the burden of proving jurisdiction and the court may resolve factual disputes." Robinson v. Ohio, Dep't of Dev., 69 F.App'x 204, 205 (6th Cir. 2003) (citing Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986)).

Rule 12(b)(6) permits courts to dismiss a complaint for failure to state a claim upon which relief may be granted. It requires this Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "Although this is a liberal pleading standard, it requires more than the bare assertion of legal conclusions. Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Se. Tex. Inns, Inc. v. Prime Hospitality Corp., 462 F.3d 666, 671-72 (6th Cir. 2006), reh'g denied (Sept. 27, 2006) (quoting NHL Players Ass'n v. Plymouth Whalers Hockey Club, 419 F.3d 462, 468 (6th Cir. 2005)).

ANALYSIS OF THE PARTIES' CLAIMS

Timeliness of Claims under the ADA.

Courts considering the timeliness of claims under the ADA are instructed to look to the state's statute of limitations for personal injury actions. Lewis v. Fayette County Detention Ctr., No. 99-5538, 2000 WL 556132, at *2 (6th Cir. Apr. 28, 2000). Therefore, the one-year statutory period set forth in Tennessee Code Annotated § 28-3-104 for civil rights actions has been applied to ADA cases brought in the federal courts of Tennessee. See Miller v. City of Knoxville, No. 3:03-CV-574, 2006 WL 2506229, at *3 (6th Cir. Aug. 29, 2006). The statute begins to run at the time the cause of action accrues. Williams v. Trevecca Nazarene Coll., No. 97-5705, 1998 WL 553029, at *1 n.2 (6th Cir. Aug. 17, 1998).

The Plaintiff has alleged in his complaint that he was terminated on February 25, 2005 and was made aware thereof on March 3, 2005. The instant lawsuit was brought on April 19, 2006. While Lucas does not dispute that the applicable statute of limitations for his action is one year, he contends that the period should be extended on two bases. First, he points to the statute of limitations provision of the Tennessee Human Rights Act (the "THRA"), which provides that "[a] civil cause of action under this section shall be filed in chancery court or circuit court within one (1) year after the alleged discriminatory practice ceases . . ." Tenn. Code Ann. § 4-21-311(d). He also cites to Booker v. The Boeing Co., 188 S.W.3d 639 (Tenn. 2006), which contains a discussion of the meaning of the term "ceases," as used in the statute. The Plaintiff herein refers specifically to the Booker court's finding that "[a] discriminatory pay rate is actionable until it 'ceases.' It does not cease each time an employee receives a paycheck. Rather, it ceases when the employer brings the employee into parity with his or her peers." Booker, 188 S.W.3d at 648. Based on Booker, the

4

Plaintiff submits that his "pay rate was not brought into parity with his peers despite his desperate attempts to address such discriminatory practices" and that the "discriminatory pay rate" ceased when he received his last paycheck on March 31, 2005.  (Resp. to Def.'s Mot. to Dismiss at (unnumbered) 5-6) The glaring and fatal flaw in the Plaintiff's argument is twofold: he has not sued under the THRA and, therefore, its statute of limitations as well as any interpretation thereof has no application here and, while a discriminatory pay rate may be actionable, he has not alleged discrimination in pay in his complaint.

Second, Lucas insists that equitable tolling of the statute of limitations is warranted under the doctrine of fraudulent concealment.  He avers that he was unaware of the existence of a cause of action until the arbitration hearing on October 10, 2005 when MCS revealed that his violation of the employer's five percent policy lead to his termination.  The Plaintiff's assertion is disingenuous, however, in light of the allegation in his complaint that "[o]n February 22nd, 2005, Plaintiff met briefly with Kimkea' Harris to discuss accommodations for plaintiff, to discuss various types of leaves that the Employer offered, and *to inform Plaintiff of a 5% attendance policy that the Defendant Employer relies on to discipline employees.*"  (Compl. at ¶ 21) (emphasis added)

The Plaintiff's ADA claim is also untimely on the grounds that he failed to file a charge with the Equal Employment Opportunity Agency (the "EEOC") within the time period prescribed by law. "Title VII specifies with precision the prerequisites that a plaintiff must satisfy before filing suit." Dendinger v. Ohio, 207 F.App'x 521, 525 (6th Cir. 2006) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)) (internal quotation marks omitted).  The statute requires that an aggrieved individual file a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days "after the alleged unlawful employment

practice occurred," if he "initially instituted proceedings with a State or local agency" qualified to provide relief. 42 U.S.C. § 2000e-5(e)(1). Tennessee has a state system of administrative remedies, which the Plaintiff invoked in filing his EEOC charge with the Commission. See El-Zabet v. Nissan N. Am., Inc., 211 F.App'x 460, 463 (6th Cir. 2006). Therefore, the 300-day period applies. The EEOC charge filed by Lucas, a copy of which is attached as an exhibit to the complaint, is dated March 16, 2006, far more than 300 days after his discharge.

Based upon the allegations contained in the complaint, the Plaintiff's ADA claim is time-barred.[1]

Claims Based on the Fourteenth Amendment's Due Process Clause.

The Due Process Clause of the Fourteenth Amendment prohibits the state from "depriv[ing] . . . any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. As recently articulated by the Sixth Circuit,

> [t]he right to procedural due process requires that when a State seeks to terminate a protected interest it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective. Importantly, procedural due process rights are only vindicated when a *protected* liberty or property interest is denied without adequate hearing. Thus, in order to succeed on [a procedural due process] claim, [a p]laintiff must show (1) that [he] was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law.

Club Italia Soccer & Sports Org., Inc. v. Charter Twp of Shelby, 470 F.3d 286, 296 (6th Cir. 2006) (internal citations and quotation marks omitted) (emphasis in original).

A review of the complaint reveals that the Plaintiff clearly set out a claim for violation of his

---

[1] Although the Plaintiff refers to an appeal of the termination decision in his motion papers, he neither argues that the existence of any appeal tolled the statute of limitations nor provides the Court with documentation upon which it could conduct a review.

rights under the Fourteenth Amendment. However, although the Defendant purports to seek dismissal of all the Plaintiff's claims in the instant motion, he does not address the Fourteenth Amendment claim. Therefore, the Court cannot at this juncture consider the merits thereof.[2]

## CONCLUSION

For the reasons set forth herein, the Defendant's motion to dismiss the Plaintiff's ADA claim is GRANTED.

IT IS SO ORDERED this 18th day of June, 2007.

> s/ J. DANIEL BREEN
> UNITED STATES DISTRICT JUDGE

---

[2]The Court notes that the Defendant seeks dismissal of state claims for violation of Tennessee Code Annotated § 49-5-512 and for breach of contract. However, as the complaint does not allege a cause of action under either of those theories, the Court will not address the Defendant's arguments.